## Case No. 8,356.

### LINCOLN et al. v. The VOLUSIA.

[The case reported under above title in 19 Hunt. Mer. Mag. 80, is the same as Case No. 16,992.]

---

## Case No. 8,357.

### LINCOLN et al. v. The VOLUSIA.

[6 Pa. Law J. 469; 4 Pa. Law J. Rep. 65.]

District Court, E. D. Pennsylvania. Sept. 21, 1846.[1]

SHIPPING—PORT REGULATIONS—WHARVES.

1. If a berth at any of the wharves of the city of Philadelphia be for the time occupied by a vessel in which the owner or possessor of the wharf has an immediate interest, whether such vessel be loading, discharging or empty, no other vessel can claim a right to occupy that berth.

2. If an adequate berth be vacant at any wharf it may be occupied at once with the owner's consent, otherwise the master or agent of the vessel must apply to the owner or possessor of the wharf for permission to occupy it, and if within twenty-four hours after such application the vacant berth is not filled by some vessel in which the owner or possessor of the wharf has an immediate interest, it may then be lawfully occupied by the vessel for which the application was made, for such time as the despatch of business may require.

3. A vessel arriving from sea and desirous of discharging her cargo may claim the inner berth at the wharf for a reasonable time, not exceeding six days, and may require vessels that are empty or receiving freight, to take for the time the outer berth, unless between the 10th December and 1st March.

4. The custom of the port of Philadelphia has established the right of a vessel, which has legally occupied an outer berth, to claim the next inner berth which she covers whenever it has become vacant.

5. The wardens of the port represented by the master wardens, and the harbour masters, are the officers entrusted with the interpretation, application and enforcement of the legal and customary regulations of the port.

The libellants [E. Lincoln & Co.] were the owners of a line of packets trading between

---

[1] [Reversed in Case No. 16,992.]

Philadelphia and Boston, and were lessees, and for the purposes of their business, occupiers of a wharf on the River Delaware within the city limits. On the 15th of September, 1846, the outer end of their wharf was occupied by one of their vessels, the Robert Waln, which had just completed her discharge. The south side was occupied by another of their vessels, the Sulla, which was then nearly empty, and, according to the regulation of the packet line, was to receive freight till the following Saturday, the 22nd, and then to sail on her regular trip. The Volusia, a schooner just arrived with a cargo from Palermo, occupied with the consent of the complainants the outer berth abreast of the Robert Waln, and was secured by her hawser to the complainants' wharf. The Robert Waln being in the act of running from her berth, efforts were made by both the Sulla and the Volusia to occupy it. The Sulla succeeded, and early on Monday she discharged the rest of her cargo. The proprietors of the wharf desired to retain her there to await the arrival of freight, but the harbour master, acting under the authority of the wardens of the port, compelled her to give place to the Volusia.

Mr. Waln, for libellants.
H. M. Phillips, for respondent.

KANE, District Judge. The complainants claim damages from the owners of the Volusia for their alleged loss and wharfage at a rate greatly above the usage, for the forcible occupation of their wharf at a time when it was wanted for their own purposes. They have failed however, to connect the agents or officers of the Volusia with the action of the harbour master, and they cannot set up his misconduct, if any such were proved, as a reason for enhancing the charge of wharfage. But I have been asked on both sides to examine the question whether the Volusia, under the circumstances was or was not entitled to claim the berth which was assigned her by the harbour master, and as I am told that there are cases constantly occurring which make an exposition of the law of the port on this subject desirable, I have reviewed with some care the different regulations that appear to bear upon it. By the laws of Pennsylvania, the right to the bed of a navigable stream resides in the commonwealth. The title of the riparian owner extends only to low water mark. The privilege of erecting wharves to project into the stream, is therefore one which may be granted or withheld at the pleasure of the state. An act of the assembly authorizes the wardens of the port of Philadelphia to confer this privilege as to the River Delaware on certain parties, the wharves, when constructed, being of course subject to such legal regulations as may be prescribed. Some of these are set forth in the different statutes, and the duty of making others is delegated to

the wardens. The master warden is the president of the board, and may in certain cases act as its representative in the intervals of its meeting, but its executive officer is the harbour master. The duty of the harbour master, so far as the present question is concerned, is to enforce and superintend the execution of all laws of the commonwealth, and all regulations of the corporation of Philadelphia, or of the wardens of the port, for regulating and stationing all ships or vessels in the stream of the river, or at the wharves within the boundaries of the city, for removing from time to time ships and vessels to accommodate and make room for others, and for compelling masters of vessels to accommodate each other, so that vessels arriving from sea shall for a reasonable time, not exceeding six days, be entitled to a berth next to the wharves, such as are loading being in the meantime removed to the outside and receiving their cargoes over the decks of the others.

The regulations not immediately and necessarily implied in this summary of the powers of the harbour master are included, so far as regards the present inquiry, in the 14th section of the act of assembly of 29th March, 1803, and in the 6th rule adopted by the wardens in February, 1819. The corporation of the city has not, I believe, legislated on the subject.

I deduce from these regulations, taken together, the following conclusions:

1st. If a berth at any of the wharves be for the time occupied by a vessel, in which the owner or possessor of the wharf has an immediate interest whether such a vessel be loading, discharging, or empty, no other vessel can claim a right to occupy that berth.

2nd. If an adequate berth be vacant at any wharf, it may be occupied at once, with the owner's consent, otherwise the master or agent of the vessel must apply to the owner or possessor of the wharf for permission to occupy it; and if within twenty-four hours after such application the vacant berth is not filled by some vessel in which the owner or possessor of the wharf has an immediate interest, it may then be lawfully occupied for such time as the dispatch of business may require by the vessel for which the application was made.

3rd. A vessel arriving from sea and desirous of discharging her cargo, may claim the inner berth at the wharf for a reasonable time, not exceeding six days, and may require vessels that are empty, or receiving freight, to take for the time the outer berth, unless between the 10th December and 1st March.

4th. The custom of the port, according to the evidence before me, has established the right of a vessel which has legally occupied an outer berth to claim the next inner berth, which she covers whenever it has become vacant.

5th. The wardens of the port, represented by the master wardens and the harbour masters, are the officers intrusted with the interpretation, application and enforcement of the legal and customary regulations of the port.

I believe that this may be regarded as a summary of the regulations on the subject of the occupation of the wharves of the Delaware within the city limits. The powers which they confer are great, and, like all other powers, may, in bad hands, be abused. But the interest of commerce at this port, and the safety of the vessels engaged in it, require that the police regulation of the river and quays should confer ample authority, and that its exercise should be direct and summary. A remedy will not be wanting when abuses shall be shown to exist; but the primary indispensable duty of those whom the law subjects to these regulations is obedience to the officer charged with their enforcement.

It is clear, from the view I have taken, that in the case of the Volusia the harbour master did not mistake his duties or transcend his authority. It is not contended that she took the outer berth, at the complainant's wharf, without permission, or that acquiescence which implies consent; and being there, she was entitled, not only by the custom of the port, but by the express terms of the written regulations to claim the inner berth as soon as the vessel she covered had been discharged. The respondents, therefore, must pay wharfage according to the accustomed rates, as set forth in their answer. As to the rest, the libel is dismissed, but without costs.

[NOTE. Upon appeal by the libellants the circuit court reversed this decree. It was held that no vessel could occupy without the consent of the owner a wharf, unless after proper notice. Case No. 16,992.]

LINCOLN, The ALBION. See Case No. 144.

LINCOLN BANK (SUFFOLK BANK v.). See Case No. 13,590.

LINCOLN COUNTY (UNION PAC. R. CO. v.). See Cases Nos. 14,378–14.380.

LINCOLN COUNTY (UNITED STATES v.). See Case No. 15.503.

LIND, The JENNY. See Case No. 7,287.